IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**CHERYL HARDEN LOVE**

        Plaintiff,

  v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH INC.,**

        Defendant.

: Case No. 1:12CV168

: Chief Judge Susan J. Dlott

: **ORDER GRANTING IN PART MERRILL LYNCH'S MOTION TO COMPEL ARBITRATION AND DISMISS**

This matter is before the Court on Defendant Merrill Lynch, Pierce, Fenner & Smith Inc.'s Motion to Compel Arbitration and Dismiss. (Doc. 4.) For the reasons that follow, the motion is **GRANTED IN PART** and this action is **STAYED** pending arbitration.

I.     BACKGROUND

L. Ross Love, the spouse of Plaintiff Cheryl Harden Love, died on August 10, 2010. (Compl., doc. 3, ¶ 4.) At the time of his death, Mr. Love owned a 401(k) plan held by Merrill Lynch (the "401(k) plan"). (*Id*. ¶ 5.) Mr. Love had designated Plaintiff as the beneficiary of the 401(k) plan, and she was to receive the assets held therein upon Mr. Love's death. (*Id*. ¶ 6.)

Following Mr. Love's death, Merrill Lynch transferred the funds in the 401(k) plan to an Individual Retirement Account (IRA) that Plaintiff opened with Merrill Lynch. (*Id*.) Upon receiving the funds, Plaintiff discovered that Merrill Lynch had made a number of withdrawals from the 401(k) plan after Mr. Love's death. (*Id*. ¶ 7.) At the request of Mr. Love's estate fiduciaries, Merrill Lynch paid $35,000 to Cardio Quick Systems, LLC on August 23, 2010 (*id*. ¶

10), $150,000 to Cardio Quick Systems, LLC on August 30, 2010 (*id.* ¶ 12), $9,700.06 to Thomas Hall Jordan Funeral Home on September 30, 2010 (*id.* ¶ 14), and $18,600 to E'lon, LLC on September 30, 2010 (*id.* ¶ 16).

On January 27, 2012, Plaintiff filed a complaint against Merrill Lynch in the Hamilton County Court of Common Pleas alleging that Merrill Lynch negligently withdrew funds from the 401(k) plan. On February 28, 2012, Merrill Lynch removed the case to federal court. Merrill Lynch now moves to compel arbitration and dismiss, arguing that Plaintiff's claims are subject to arbitration based on arbitration clauses contained in two separate documents signed by Plaintiff.

The first document is a Merrill Lynch Client Relationship Agreement signed by Plaintiff in 2004 (the "Client Relationship Agreement"). (Client Relationship Agreement, doc. 4-1.)[1] The Client Relationship Agreement established an account for "an entity known as the Love Family Foundation, Inc." (Pl.'s Mem. Opp'n, doc. 5 at 1.) The Client Relationship Agreement lists Plaintiff as the client and contains the following language:

> BY SIGNING BELOW, I AGREE TO THE TERMS OF THE
> MERRILL LYNCH CLIENT RELATIONSHIP AGREEMENT
> ON THE REVERSE SIDE AND:
> * * *
> 2. THAT, IN ACCORDANCE WITH SECTION 6, PAGE 1 OF
> THE CLIENT RELATIONSHIP AGREEMENT, I AM
> AGREEING IN ADVANCE TO ARBITRATE ANY
> CONTROVERSIES THAT MAY ARISE WITH YOU.

(Doc. 4-1.) Section 6 of the Client Relationship Agreement contains a broad arbitration clause:

> Arbitration is final and binding on you and Merrill Lynch.
> Merrill Lynch and you are waiving the right to seek remedies in

---

[1] Doc. 4-1 is the signature page of Plaintiff's Client Relationship Agreement. The Client Relationship Agreement can be found in its entirety at doc. 4-2. For purposes of this Order, the Court will refer to both documents, collectively, as the Client Relationship Agreement.

>court, including the right to jury trial.
>\* \* \*
>You agree that all controversies that may arise between us shall be determined by arbitration. Such controversies include, but are not limited to, those involving any transaction in any of your accounts with Merrill Lynch, or the construction, performance or breach of any agreement between us, whether entered into or occurring prior, on or subsequent to the date hereof.

(Doc. 4-2 at 6-7.)

The second document is a Retirement Cash Management Account (RCMA) Application Form signed by Plaintiff on January 27, 2011 (the "RCMA Agreement"). (RCMA Agreement, doc. 6-2 at 1-2.)[2] Plaintiff executed this document when Merrill Lynch transferred funds from the 401(k) plan to Plaintiff's IRA account. (Pl.'s Sur-reply Mem., doc. 9 at 1.) The RCMA Agreement contains the following language:

>BY SIGNING BELOW, WE HEREBY APPLY FOR THE RCMA ACCOUNT FINANCIAL SERVICE ("RCMA SERVICE") AND WE CONSENT TO AND AGREE TO ALL OF THE TERMS AND CONDITIONS OF THE RCMA ACCOUNT AGREEMENT AND PROGRAM DESCRIPTION (THE "RCMA DOCUMENTS"), WHICH ARE INCORPORATED HEREIN BY REFERENCE.
>\* \* \*
>WE FURTHER ACKNOWLEDGE AND AGREE THAT IN ACCORDANCE WITH PARAGRAPH 13 ON PAGE 7 OF THE RCMA ACCOUNT AGREEMENT THAT WE AGREE IN ADVANCE TO ARBITRATE ANY CONTROVERSY WHICH MAY ARISE WITH MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED.

---

[2] Doc. 6-2 at 1-2 is a signed copy of Plaintiff's RCMA Application Form. The RCMA Application Form incorporates by reference the RCMA Account Agreement, which can be found in its entirety at doc. 12-1. For purposes of this Order, the Court will refer to both documents, collectively, as the RCMA Agreement.

3

(Doc. 6-2 at 2.)[3]

>Furthermore, Paragraph 13 of the RCMA Agreement states:
>
>>This Agreement contains a predispute arbitration clause.  By signing an arbitration agreement the parties agree as follows:
>>
>>- All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
>>
>>* * *
>>
>>You agree that all controversies that may arise between us shall be determined by arbitration.  Such controversies include, but are not limited to, those involving any transaction in any of your accounts with Merrill Lynch, or the construction, performance or breach of any agreement between us, whether entered into or occurring prior, on, or subsequent to the date hereof.

(*Id*. at 8.)

Plaintiff opposes the motion to compel and dismiss, contending that she is not bound by the arbitration clauses in either of the two documents.  Specifically, Plaintiff disputes (1) whether her claim falls within the scope of the arbitration clause contained in the Client Relationship Agreement and (2) whether the arbitration clause in the RCMA Agreement applies retroactively to disputes arising before the execution of the agreement.

## II.    STANDARD

In its motion, Merrill Lynch asks this Court to compel arbitration and to dismiss this action pending arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA").

---

[3] Merrill Lynch also provided the Court with a copy of the RCMA Application Form for the 401(k) plan, which was signed by Mr. Love in 2005.  (*See* doc. 6-2 at 3-4.)  Mr. Love's RCMA Agreement and Plaintiff's RCMA Agreement contain identical arbitration clauses. (*Compare* doc. 6-2 at 2, *with* doc. 6-2 at 4.)

The FAA "manifests 'a liberal federal policy favoring arbitration agreements.'" *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 626 (6th Cir. 2004), quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "To enforce this dictate, [the FAA] provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing 9 U.S.C. §§ 3 and 4).

The Sixth Circuit explains:

> "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch*, 315 F.3d at 624. "As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25 (1983). "There is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576–77 (6th Cir. 2003) (quoting *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L.Ed. 2d 648 (1986)).

*Masco Corp.*, 382 F.3d at 627.

### III. ANALYSIS

#### A. The Arbitration Clauses

Under the arbitration clauses contained in the Client Relationship Agreement and the RCMA Agreement, the parties must submit the present dispute to arbitration. The arbitration clause in the Client Relationship Agreement governs "any controversies that may arise with

[Merrill Lynch]." (Doc. 4-1.) The Client Relationship Agreement further provides:

> You agree that all controversies that may arise between us shall be determined by arbitration. Such controversies include, but are not limited to, those involving *any transaction in any of your accounts with Merrill Lynch*, or the construction, performance or breach of *any agreement between us, whether entered into or occurring prior, on or subsequent to the date hereof*.

(Doc. 4-2 at 6-7) (emphasis added). Plaintiff does not dispute that an agreement to arbitrate exists between her and Merrill Lynch. Rather, Plaintiff argues that her present claims do not fall within the scope of the Client Relationship Agreement's arbitration clause because her present claims have no connection to the Client Relationship Agreement. (*See* doc. 5.) The Court disagrees.

The plain language of the arbitration clause governs "any controversies" and is not limited to disputes arising out of the Client Relationship Agreement. (*See* doc. 4-1.) By executing the Client Relationship Agreement, Plaintiff agreed to arbitrate "any controversies that may arise with [Merrill Lynch]," (*id.*), whether that controversy "occurr[ed] prior, on, or subsequent to the date" of the Client Relationship Agreement (doc. 4-2 at 6-7). The current "controversy" between the parties is whether Merrill Lynch negligently withdrew funds from the 401(k) plan, thereby decreasing the amount that was deposited into Plaintiff's IRA. Plaintiff's claim, as described in the Complaint, falls within the broad arbitration clause contained in the Client Relationship Agreement.

Likewise, the arbitration clause in the RCMA Agreement governs "any controversy which may arise with [Merrill Lynch]." (Doc. 6-2 at 2.) The RCMA Agreement states that "all controversies that may arise between [Plaintiff and Merrill Lynch] shall be determined by arbitration." (Doc. 12-1 at 8.) The RCMA Agreement defines "controversies" to include "any

6

transaction in any of your accounts with Merrill Lynch, or the construction, performance or breach of any agreement between us, whether entered into or occurring prior, on, or subsequent to the date hereof." (*Id*.) Plaintiff argues that this clause does not apply to the present dispute because the alleged unlawful withdrawals at issue took place before Plaintiff executed the RCMA Agreement.

The Sixth Circuit addressed the issue of whether an arbitration agreement may apply retroactively in *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646 (6th Cir. 2008). The arbitration clause at issue in *Watson Wyatt* required that the parties arbitrate "any dispute or claim arising from or in connection with [the agreement] or the services provided by Watson Wyatt." 513 F.3d at 649. Because the arbitration clause covered more than claims arising out of the agreement itself, the court held that claims arising out of "the services provided" were not limited by the time frame of the agreement, and the arbitration clause applied retroactively. *Id*. at 652.

Here, too, the arbitration clause in the RCMA Agreement is not limited to claims arising out of the agreement itself. The arbitration clause governs "any controversy which may arise with Merrill Lynch, Pierce, Fenner & Smith Incorporated." (Doc. 6-2 at 2.) Furthermore, the arbitration clause governs controversies "occurring prior, on, or subsequent to the date" of the agreement. (Doc. 12 at 8.) Allegations of negligent acts occurring prior to the funding of Plaintiff's IRA therefore fall within the RCMA Agreement's broad arbitration clause.

Plaintiff does not set forth any other legal grounds for not enforcing the arbitration clause. Accordingly, the parties must submit this dispute to arbitration in accordance with the arbitration clauses contained in the Client Relationship Agreement and the RCMA Agreement.

B.     Stay Pending Arbitration or Dismiss Without Prejudice

With respect to the issue of staying of dismissing the matter, the Court has discretion to choose either course of action. *See* 9 U.S.C. § 3 (mandating courts to stay proceedings pending completion of arbitration); *Hensel v. Cargill, Inc.*, No. 99-3199, 1999 WL 993775, at *4 (6th Cir. Oct. 19, 1999) (permitting courts to dismiss actions in which all claims are referred to arbitration).  Under the facts of this case, the Court believes that staying Plaintiff's claim will promote judicial economy.  Accordingly, this action will be stayed pending arbitration and the Court will retrain jurisdiction to enforce the arbitration award, if any.

IV.     **CONCLUSION**

Based on the foregoing, the Court **GRANTS IN PART** Merrill Lynch's Motion to Compel Arbitration and Dismiss (doc. 4) and **STAYS** this action pending arbitration.

IT IS SO ORDERED.

                                                     s/Susan J. Dlott
                                                Chief Judge Susan J. Dlott
                                                United States District Court